**Elwoodrow Wilson BROOKS, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16209.**

Court of Criminal Appeals of Oklahoma.

March 24, 1971.

Don Anderson, Public Defender, for plaintiff in error.

Larry Derryberry, Atty. Gen., Paul Ferguson, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Elwoodrow Wilson Brooks, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County of Assault and Battery with a Dangerous Weapon With Intent To Kill, After Former Conviction of a Felony.

Trial was had to a jury with two co-defendants, Jimmy Lee Brooks and Louis Patrick Tucker. All were found guilty; the defendant's punishment was fixed at ten (10) years imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated the evidence at the trial revealed that on October 11, 1969, Gaylin Wilbert Mukes operated Martin's Tavern at 10377 Northeast 50th Street. He testified that the three defendants were there "raising a ruckus" and he asked them to leave. Tucker went outdoors and returned with a revolver in his pocket. Mukes took the pistol away from Tucker and put him outdoors. When Mukes tried to put Jimmy Lee out, the defendant with hand in pocket walked up to Mukes whereupon Mukes hit the defendant in the mouth with a shotgun. All three defendants went out and about ten or fifteen minutes later somebody opened the door and a gun discharged, striking Mukes in the lungs and liver. When the door was opened Mukes saw the defendant sitting across the street and as the gun fired he saw the three defendants jump into a car and leave. He testified on redirect examination that he testified before that the defendant shot him.

Officer Acox, of the Oklahoma City Police Department, testified about arresting Elwoodrow on April 14, 1969.

For the defense, Jimmy Lee Brooks, Elwoodrow's brother, testified he was pretty high that night from drinking beer. Willy Watts drove Jimmy's car, and Elwoodrow and his cousin, Louis Patrick Tucker, were with them. When Mukes began upbraiding him and asked him to leave Jimmy left and went to sleep in the rear of the car. He did not see Mukes eject Tucker or take the gun away from him, did not hear any shot fired, and, being asleep, was unaware when the car was driven away.

The defendant testified that he and the two co-defendants went to Mukes' Tavern. The three went inside and he waited in the car. He went to the door to get them and was struck in the mouth. He did not re-

member anything further until he awoke in the car on 23rd Street.

Louis Tucker testified that he was at the Tavern that night. He and Jimmy Lee were inside and Mukes asked them to leave, which they did. When they got outside Mukes appeared with a shotgun and ordered him to throw the pistol on the ground. He then reached in his pocket and pitched it on the ground. It was a .32 automatic which he had bought earlier that day and had no clip in it. The defendant came staggering up to the car and they put him in it and left, Watts being with them.

■ The first proposition contends that the evidence is insufficient to support the verdict. This Court has consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. Williams v. State, Okl.Cr., 373 P.2d 91.

■ The defendant's final proposition asserts that the trial court erred in failing to instruct on aiding and abetting. The record does not reflect that the defendant requested such an instruction and saved no exception to the instructions offered. In the recent case of Schapansky v. State, Okl.Cr., 478 P.2d 912, we stated:

"Where counsel is not satisfied with instructions that are given, or desires court to give any particular instruction, or to more definitely or sufficiently state any propositions embraced in instructions, it is the duty of counsel to prepare and present to the Court such desired instructions and request that it be given and in absence of such request, Court of Criminal Appeals will not reverse case if instructions generally cover subject matter of inquiry."

We are of the opinion that the instructions in the instant case are sufficient to cover the subject matter of inquiry and therefore find this proposition to be without merit.

In conclusion, we observe that the record is free of any error which would justify modification or reversal, the punishment imposed is the minimum allowed by law and under such circumstances the judgment and sentence should be and the same is affirmed.