Roman **HILDEBRANDT**, Appellant,

v.

The **STATE** of **Oklahoma**, Appellee.

No. A–17909.

Court of Criminal Appeals of Oklahoma.

March 13, 1973.

Don C. Davis, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Jeff L. Hartmann, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Roman Hildebrandt, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Comanche County, Case No. CRF–72–58, for the offense of Illegal Distribution of Lysergic Acid Diethylamide. His punishment was fixed at five (5) years imprisonment and a fine of Five Hundred Dollars ($500.00). From said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial adduced that on January 21, 1972 William Tebbe was working as an undercover narcotic agent assigned to the criminal investigation division at Ft. Sill, Oklahoma. He and Criminal Investigator Glenn Skaggs went to an apartment located at 314 Park Street in Lawton and purchased three (3) LSD tablets from the defendant at approximately 11:00 p. m., paying him Twelve Dollars ($12.00). The suspected LSD tablets were subsequently turned over to Detective Rutledge of the Lawton Police Department.

Detective Rutledge testified that he and Inspector Holt followed Tebbe and Skaggs to 314 Park Street in Lawton. He observed them go into the apartment and followed the two to the police station after they left the premises. He received four tablets from Tebbe which he subsequently mailed to the Oklahoma Bureau of Investigation for analysis.

Donald Flynt, a chemist for the Oklahoma Bureau of Investigation, testified that he conducted certain tests on State's Exhibit No. 3 and found that the same contained Lysergic Acid Diethylamide.

For the defense, Billy Jo Nieuwendaal testified that on January 21, 1972, she lived at 314 Park Street in Lawton. The defendant and several other persons resided at her house. On the evening of January 21, Agents Tebbe and Skaggs came to her house. Defendant "either left before they got there or just after they got there." (Tr. 99) The defendant did not return until after midnight.

The defendant testified that he left the apartment at approximately 7:30 on the evening in question and did not return until after midnight. He denied selling the LSD to Agent Tebbe.

■ The first proposition asserts that the military agents were incompetent as witnesses by virtue of a federal prohibition against them acting as a *posse comitatus*. In dealing with a similar proposition in the recent case of Hubert v. State, Okl.Cr., 504 P.2d 1245, we stated:

"The defendant asserts two assignments of error, both dealing with the admissibility of the evidence. Defendant argues that the military CID agents were incompetent as witnesses by virtue of a federal prohibition against them acting as a *posse comitatus*. Title 18 U.S.C., Section 1385, provides as follows:

'Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.'

"We are of the opinion that both propositions are without merit. *Posse comitatus* is defined in Black's Law Dictionary as follows:

'The power or force of the county. The entire population of a county above the age of fifteen, which a sheriff may summon to his assistance in certain cases; as to aid him in keeping the peace, in pursuing and arresting felons, etc.'

"The evidence adduced that the Lawton law enforcement authorities did not summon the military agents' assistance. To the contrary, Detective Rutledge was contacted by Agent Holt. The agents were investigating a soldier from Ft. Sill from whom they had previously purchased narcotics and proceeded to determine his source of supply. The soldier led the agents to a location outside the scope of their military jurisdiction, at which time the agents assumed no greater authority than that of a private citizen.

"We further observe that neither statutory provision concerning competency of witnesses, 22 O.S., § 702, nor 12 O.S., § 385, provides that military personnel are incompetent as witnesses."

■ The second proposition contends that the defendant was entrapped. We need only to observe that there was no evidence introduced on behalf of the defendant to support his theory of entrapment. To the contrary, the defendant testified that he did not sell the LSD tablets. Defendant requested an entrapment instruction which was given by the trial court, without objection by the State. In Kite v. State, Okl.Cr., 490 P.2d 1402, we cited with approval Riddle v. State, Okl.Cr., 373 P.2d 832, wherein we stated:

"'Whether a defendant has been entrapped is to be determined by the jury, unless it can be decided as a question of law upon undisputed facts sufficient to to [sic] establish entrapment.'"

We therefore, find this proposition to be without merit.

■ The third proposition asserts that the trial court erred in admitting into evidence a police photograph of the defendant. The photograph shows two frontal

views of the defendant and a side view. The full length frontal view shows the defendant holding a sign captioned "HILDERBRANDT R G POLICE 68 405 DEPT LAWTON 12 16 71 OKLA".

Defendant first argues that the photograph was improperly identified in that the defendant denied that it was a faithful representation of him as it existed at the time of the controversy. We are of the opinion that the photograph was properly identified. The defendant testified that the photograph was his picture taken in December of 1971. He stated that the picture accurately represented his appearance on January 21, 1972 with the exception that his mustache was a little shorter in January than it was in December.

■ Defendant next argues that the photograph constituted evidence of a prior arrest which was irrelevant to the current charge and highly prejudicial. In Dirring v. United States, 1 Cir., 328 F.2d 512, cert. den., 377 U.S. 1003, 84 S.Ct. 1939, 12 L. Ed.2d 1052, reh. den., 379 U.S. 874, 85 S. Ct. 27, 13 L.Ed.2d 83, the Court stated:

"Nor do we agree that it was error to allow the police photograph in evidence because it revealed that the defendant had been in prior difficulties. While this subject is frequently thought of in terms of the well-established exceptions, such as those relating to identity, design, or intent, see, e. g., Jarabo v. United States, 1 Cir., 1946, 158 F.2d 509, 513–514, the principle seems better described (although again it is not free from exception) from the obverse standpoint. 'Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime.' United States v. Stirone, 3 Cir., 1958, 262 F.2d 571, 576, rev'd on other gr'ds, 361 U.S. 212, 80 S. Ct. 270, 4 L.Ed.2d 252; see McCormick, Evidence, § 157 (1954); cf. Uniform Rules of Evidence, 55, 47 (1954). As we said in Green v. United States, 1 Cir., 1949, 176 F.2d 541, 543, '[T]estimony

otherwise relevant is not rendered inadmissible merely because its tendency to prove the commission of some other crime.' The photograph in question had independent relevancy, not possible to separate. We think it was within the court's discretion to conclude that this outweighed the photograph's prejudicial effect. * * *"

In overruling defendant's motion for new trial based upon this proposition, the trial court stated that in his opinion the photograph was relevant for reasons other than impeachment. The defendant's testimony implied that he first arrived in Lawton on January 9, 1972, wherein the photograph adduces that he was present in Lawton on December 16, 1971. The photograph further reflects the defendant's appearance on December 16 matches closely the appearance of the defendant as testified to by the undercover agent at the time of the purchase. The photograph also reflects that he was wearing a parka type jacket which corresponds to the clothing worn by the defendant on January 21.

■ We are of the opinion that the trial court did not abuse its discretion in ruling that the relevancy of the photograph outweighed the possible prejudicial effect. The trial courts will, in all future cases, remove the writings on the police photographs.

■ The final proposition contends that the trial court erred in admitting hearsay evidence that the defendant "dealt the marijuana'. The record reflects that Officer Skaggs testified on direct examination concerning a conversation with Steve Mister as follows:

"[By Mr. Aubrey] Q. Who brought the subject of drugs up?

"A. Steve Mister.

"Q. Then what happened?

"A. I then talked about purchasing some from Steve Mister. I had made arrangements to purchase some from him and then I asked him about some marijuana. He told me he didn't deal

marijuana; that the individual in the back bedroom was the one that dealt the marijuana." (Tr. 31)

We need only observe that the defendant did not timely object to the introduction of the hearsay testimony.

■ In conclusion, we observe that because of the indigency of the defendant justice would best be served by modifying the judgment and sentence to a term of five (5) years imprisonment, and as so modified, the judgment and sentence is affirmed.

Modified and affirmed.

BLISS, P. J., and BRETT, J., concur.